```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEBRASKA
 2
     UNITED STATES OF AMERICA,    )  8:18CR139
 3                                )  September 5, 2018
           Plaintiff,            )  9:32 a.m.
 4                                )  Omaha, Nebraska
     VS.                          )
 5                                )
     PHILIP J. GREGORY,           )
 6                                )
           Defendant.            )
 7

 8

 9          TRANSCRIPT OF MOTION TO SUPPRESS PROCEEDINGS        `
              BEFORE THE HONORABLE SUSAN M. BAZIS
10               UNITED STATES MAGISTRATE JUDGE

11

12                  A-P-P-E-A-R-A-N-C-E-S

13   For the Plaintiff:     Michael P. Norris
                            Assistant United States Attorney
14                          1620 Dodge Street
                            Suite 1400
15                          Omaha, Nebraska 68102

16                          Nadia C. Prinz
                            U.S. Department of Justice
17                          1400 New York Avenue
                            Washington, DC 20005
18
     For the Defendant:     John S. Berry
19                          Berry Law Firm
                            2650 N. 48th Street
20                          Lincoln, Nebraska 68504

21   Transcriber:           Allan G. Kuhlman
                            11408 North Vista Ranch Place
22                          Marana, AZ 85658
                            (520) 989-0626
23

24
     Proceedings recorded by digital recording; transcript
25   produced with computer.
```

1          (At 9:32 a.m. on September 5, 2018, with counsel for

2     the parties and the defendant present, the following

3     proceedings were had:)

4          THE COURT:  18CR139, United States of America versus

5     Philip J. Gregory.

6          Will the attorney for the government please enter

7     their appearance for the record?  You can stay seated so it

8     gets recorded.

9          MS. PRINZ:  Good morning, Your Honor, Nadia Prinz

10    and Mike Norris for the government.

11         THE COURT:  And for the defendant?

12         MR. BERRY:  Good morning, Your Honor, John Berry for

13    the defendant, Philip Gregory, who is present.

14         THE COURT:  And we're here on the defendant's motion

15    to suppress.  Are all parties ready to proceed?  Government?

16         MS. PRINZ:  Yes, Your Honor.

17         THE COURT:  Defendant?

18         MR. BERRY:  Yes, Your Honor.

19         THE COURT:  Are there any preliminary issues?

20         MS. PRINZ:  Your Honor, I want to let Your Honor

21    know we are not planning on calling for any testimony.

22         I was simply going to speak to the brief, obviously

23    not reread it or reargue the brief in its entirety before

24    Your Honor, and give Your Honor an opportunity to ask

25    questions at any point Your Honor would wish to.

1              THE COURT:  Okay.  Do you have any evidence that you

2      are going to submit?

3              MS. PRINZ:  We are not submitting any evidence aside

4      from the exhibits that have already been filed along with the

5      motion, Your Honor, with the brief.

6              THE COURT:  Normally they are marked and received at

7      the hearing.

8              MR. NORRIS:  Your Honor, if I may?

9              THE COURT:  Yes.

10             MR. NORRIS:  I think Mr. Berry has a number of

11     exhibits that include what he filed.

12             He doesn't have the capacity or the ability to get

13     those printed at this point, because he has some issues.

14             We can get you our declaration and we can get you

15     the terms of service.  That's not a problem.

16             I can possibly e-mail them to Mary Beth off my phone

17     and get those as originals.

18             We don't have any problem with Mr. Berry submitting

19     what he has already submitted as part of his brief, which

20     would have been, as I recall from our conversation this

21     morning, the CyberTip, the subpoena, the warrants, including

22     affidavits, all that are set forth in his index.

23             So I think we know what the numbers are and we can

24     get you a package --

25             THE COURT:  Of the exhibits?

1           MR. NORRIS:  Of the Exhibits.

2           THE COURT:  All right.  So it's going to be

3     everything that Mr. Berry has indicated on his index of

4     evidence?  There's not -- you don't have anything in addition

5     to that?

6           MR. NORRIS:  We have our own we filed with our

7     brief, our responsive brief, and it's a declaration from

8     Google and the terms of service that relates to Google.

9           So those are our two exhibits that were filed with

10    our brief.

11          We have a declaration from the National Center for

12    Missing and Exploited children.

13          So we have a total of three that have been filed and

14    we can get those to you.

15          THE COURT:  I'm sorry.  Finish that last statement,

16    Mr. Norris.

17          MR. NORRIS:  We can get those to you.  I can get

18    those printed yet.

19          I can probably find them on my phone and send them

20    to Mary Beth so we have them here now.

21          THE COURT:  Okay.

22          MR. BERRY:  I have all three of them.  When I was

23    printing out mine, I got theirs printed and five of the seven

24    of mine before our server crashed.  So I do have the

25    government's --

1          MR. NORRIS:  I think we have them.

2          MS. PRINZ:  It's just that, Your Honor, one of my

3   copies of the declaration is marked up with some asterisks

4   and since obviously the file copy that the defense has didn't

5   have those marks on it, I wasn't sure if that it would be

6   appropriate to submit.

7          THE COURT:  It would not be.

8          MS. PRINZ:  Okay.

9          MR. BERRY:  Your Honor, now that we have wasted all

10  that time --

11         THE COURT:  Okay.

12         MR. BERRY.  I have all of mine; the government has

13  theirs.

14         THE COURT:  Why doesn't the government approach and

15  have Mary Beth mark those, or maybe they are.

16         Government Exhibit 1 is a declaration of Cathy

17  McGoff?

18         MS. PRINZ:  Yes, Your Honor.

19         THE COURT:  And it looks likes there is a 1-A, so is

20  this part of the declaration?

21         MS. PRINZ:  Yes, this was attached with the

22  declaration.  That's how we received it from Cathy McGoff.

23         THE COURT:  The declaration, as I understand it,

24  talks about the Google terms of service, correct, because

25  what I would be inclined to do is attach these documents as

```
 1   one document and have it as number one.

 2            MS. PRINZ:  No objection to that, Your Honor.

 3            THE COURT:  Any objection if the court receives

 4   Exhibit No. 1?

 5            MR. BERRY:  No, Your Honor.

 6            THE COURT:  Exhibit 2 is a declaration of John

 7   Shehan?

 8            MS. PRINZ:  Yes, Your Honor.

 9            THE COURT:  Any objection if the court receives

10   Exhibit No. 2?

11            MR. BERRY:  No, Your Honor.

12            THE COURT:  Two will be received.  Is that the sum

13   and substance of the government's evidence?

14            MS. PRINZ:  Yes, Your Honor.

15            THE COURT:  Mr. Berry, do you have any evidence?

16            MR. BERRY:  I do, Your Honor.  I have seven

17   exhibits.  May I approach?

18            THE COURT:  You may.  Mary Beth says you will have

19   to start with 101.

20            MR. BERRY:  Yes, Your Honor.

21            THE COURT:  I have Defendant's Exhibit 101, which is

22   the CyberTipline report, correct?

23            MR. BERRY:  Yes, Your Honor.

24            THE COURT:  And I'm assuming you're offering all of

25   these, Mr. Berry?
```

```
1              MR. BERRY:  That's correct, Your Honor.

2              THE COURT:  Does the government have any objection

3    to 101?

4              MS. PRINZ:  No, Your Honor.

5              THE COURT:  102 looks like the subpoena to Cox

6    Communications from the Douglas County Attorney.  That's 102.

7              Does the government have any objection to

8    Exhibit 102?

9              MS. PRINZ:  No, Your Honor.

10             THE COURT:  Exhibit 103 is the e-mail with Mr. --

11   Deputy Dishaw in regards to a response to his inquiry to Cox

12   Communications.  Any objection to Exhibit 103?

13             Ms. PRINZ:  No objection, Your Honor.

14             THE COURT:  104 is the application for a search

15   warrant, as well as the search warrant.  Any objections to

16   104?

17             MS. PRINZ:  No objection, Your Honor.

18             THE COURT:  Actually I take that back.  104 is the

19   application and the affidavit for the search warrant.

20             I think Exhibit 105 is the actual search warrant,

21   correct?

22             MR. BERRY:  Yes, Your Honor.

23             THE COURT:  Any objection to Exhibits 104, 105?

24             MS. PRINZ:  No objection, Your Honor.

25             THE COURT:  106 is an affidavit and application for
```

1   a search warrant --

2           MS. PRINZ:  Your Honor, I think that's the Google

3   search warrant.

4           THE COURT:  Yes, for Google, and 107 is the actual

5   search warrant for the Google records.  Do you have any

6   objections to Exhibits 106, 107?

7           MS. PRINZ:  No objection to either.

8           THE COURT:  101 through 107 will be received and 1

9   and 2 of the government's exhibit will be received.

10          Any further evidence, Mr. Berry?

11          MR. BERRY:  No, Your Honor.

12          THE COURT:  So then, as I understand it, we're doing

13  argument at this point?

14          MR. BERRY:  Yes, Your Honor.

15          THE COURT:  Ms. Prinz?

16          MS. PRINZ:  Thank you, Your Honor.  Your Honor, I

17  just want to indicate, first of all, on the first page, I

18  apologize, there was an error.  The first citation is --

19          THE COURT:  First page of what?

20          MS. PRINZ:  I'm sorry.  The first page of the

21  government's brief.  I apologize.

22          THE COURT:  That's okay.  So the first page of your

23  brief?

24          MS. PRINZ:  Yes, Your Honor.  There is a reference

25  to Ornelas versus United States, that was supposed to be part

 1   of a larger string citation in combination supporting that

 2   supposition and those cases are listed and discussed in the

 3   argument.

 4          It was also supposed to include a reference to

 5   Illinois v. Gates.

 6          Ornelas alone doesn't support the statement that is

 7   in the citation and that just got cut off.  My apologies.

 8          THE COURT:  So we need to add Illinois v. Gates to

 9   that portion?

10          MS. PRINZ:  That is -- I can give the main cite, if

11   that would be helpful for Your Honor.

12          THE COURT:  Yes, you can give it.  I think I have

13   it.

14          MS. PRINZ:  462 U.S. 213, 1983.

15          THE COURT:  Thank you.  Go ahead.

16          MS. PRINZ:  Thank you.  Your Honor, put simply we

17   don't feel there is a legal basis for suppression here.  I'm

18   going to discuss each of the arguments in turn.

19          First of all, the defendant had no reasonable

20   expectation of privacy in his subscriber information with his

21   address.

22          For that reason the administrative subpoena that --

23   which received that subscriber information from Cox

24   Communications was perfectly valid and was also validly

25   included in the search warrant then.

1          This was subscriber information that had already

2    been shared with a third party internet service provider, in

3    this case Cox Communications, and it has been established by

4    the case law within the circuit and in other circuits that

5    there is no reasonable expectation in an IP address.

6          The defendant's motion indicates that this has

7    perhaps been changed or the analysis itself has been changed

8    because of the decision of the Supreme Court in Carpenter.

9          Our response to that is that Carpenter is a very

10   narrow holding, one applied specifically to cell-site

11   location information.

12         Cell-site location information is very different

13   from a street address.

14         The street address does not reveal the kind of

15   information or the level of detail that the court is

16   concerned with in Carpenter.

17         It doesn't reveal personal activities, movements

18   over time, or any of the kinds of information that was before

19   the court with regard to the defendant in Carpenter after

20   receiving 127 days of cell-site location information.

21         An IP address is simply a street address, something

22   that is easily perceivable, it's a discrete singular piece of

23   information and for that reason nothing in the Carpenter

24   analysis has changed case law.

25         In order to set up a Cox Communications subscriber

1    account the defendant would have had to give his subscriber

2    information, including his address, to that thirty party.

3         It's similar to bank records or to subscriber

4    information with a telephone company, even numbers dialed to

5    the phone company, that is information in which he had no

6    reasonable expectation of privacy.

7         The second basis for suppression argued by the

8    defense is that the CyberTip, that NCMEC had violated the

9    defendant's Fourth Amendment rights via the CyberTip.

10        In this instance NCMEC did not exceed the limits of

11   the private search that was previously done by Google and

12   thus there was no violation of the defendant's Fourth

13   Amendment rights in general, nor with regard to Ackerman.

14        In this case the declaration makes clear, as well as

15   the CyberTip, that Google had already viewed the image.  That

16   was clearly indicated.

17        Furthermore, Google had in this particular instance

18   undertaken two different forms of review.

19        One is that this image that was flagged had ended up

20   in the hash file repository and because of the unique nature

21   of the -- the fact that hash tag is like a thumb print, this

22   picture had been identified as being child pornography by its

23   hash value.

24        But moreover in this case, once the CyberTip was

25   being created, concurrently with that, as stated in the

1    declaration, Google also subjected it to manual human review

2    again.

3         The reason I say again is because Google puts all

4    images that are added to the hash repository to a prior human

5    review as well.

6         Before NCMEC ever saw the image it had been subject

7    to both those kinds of review and also apart from the

8    CyberTip tip a Google employee was actually physically

9    reviewing that image.

10        Under these reasons Ackerman is also further

11   distinguishable because in Ackerman the situation was that an

12   e-mail was uploaded and NCMEC used e-mails, along with four

13   attachments.

14        It turns out in that case only one of the

15   attachments had been flagged as child pornography and so

16   NCMEC was actually going beyond the scope of the private

17   search by the ISP, in that case it was AOL I believe, NCMEC

18   was actually going beyond that because they in fact used the

19   e-mail and the other attachments.

20        Here our case again is distinguishable because this

21   was a single file upload.

22        In this case the defendant uploaded the image to

23   Google photos.

24        There was no associated e-mail and what triggered

25   the CyberTip was simply this one single file which was

1    reviewed by Google and which also had been a part of the hash

2    repository.

3            That is exactly what NCMEC used subsequently to that

4    CyberTip being issued.

5            Therefore, those searches were completely

6    coextensive and therefore all that happened here was a

7    repetition of the private search that had already been done

8    by Google.

9            They point out that this circuit has not yet held

10   whether NCMEC is a government actor, and we are not conceding

11   that point here, but under our factual scenario it's not

12   necessary for this court to decide that, because since the

13   search was coextensive, first the private search, and then

14   the search by NCMEC, regardless of whether NCMEC is a

15   government actor, there would have been no Fourth Amendment

16   violation in that case.

17           Lastly, there was sufficient basis for probable

18   cause for the search warrant for the residence.

19           The standard of probable cause merely requires a

20   fair probability that contraband or evidence will be found in

21   the place to be served.

22           Here there was already an indication, both by

23   physical and by hash review, that an image was uploaded to

24   the Google account.

25           This had to have been done by some means, by a

1   computer, by something belonging to the person who had

2   uploaded that.

3           An image can't be put onto Google Photo simply by

4   the air.  The internet has to be accessed by use of some

5   device.

6           An image of child pornography had been identified

7   and tied to this defendant via his address or by Google

8   storage account.

9           And then the task force officer detailed in his

10  experience that collectors use such services to store images,

11  multiple images.

12          Furthermore, there could have been further evidence,

13  and was, of these particular images on those computers that

14  were to be searched.

15          So the image itself that was uploaded was already

16  evidence of a crime, was a piece of contraband, and evidence

17  of specifically that contraband was likely to be on the

18  defendant's computer.

19          There was a fair probability that that image itself

20  could be found there, aside from the possibility of other

21  contraband.

22          So for those reasons there was a sufficient basis of

23  probable cause in the search warrant.

24          One thing I would like to indicate to Your Honor is

25  that since the filing of these briefs there has been a

1    decision, a new decision, which we did not cite in our brief

2    because it was new, United States versus Redick and because

3    it was not cited in our brief I did bring copies for the

4    court today and for the defense from West Law, has the West

5    Law citation on them, it's not yet reported.

6           I would like to provide the court and the defense a

7    copy of that, if I may approach?

8           THE COURT:  You may.

9           MS. PRINZ:  Your Honor, the reason I bring up Redick

10   is that in Redick the court held, this was a Fifth Circuit

11   case, in which the court held there was no Fourth Amendment

12   violation in a police review of a file flagged by an ISP.

13          So on the one hand there, police review is a more

14   clear cut scenario of a government actor reviewing a flagged

15   search.

16          In that case, however, the court so found no Fourth

17   Amendment violation and that case dealt with an automatic

18   review by hash values.  There was no manual review in that

19   case.

20          Now only the files that were flagged were reviewed

21   by the police.

22          So the search was still coextensive, so to speak.

23   There wasn't an additional file that was viewed by the

24   police.

25          However, in that case again there was no concurrent

1    manual review.

2           It was just a file that had been identified by hash

3    value and the court found that that counted as a private

4    search.

5           Therefore, when the police reviewed those same files

6    there was no Fourth Amendment violation, and that's the

7    reason for which Redick is pertinent here, because there was

8    here -- actually one could argue a lesser standard of review

9    there, although hash values obviously do indicate exactly

10   what is in a picture and are precise, they are unique like

11   thumbprints, but in our case, in an abundance of caution,

12   Google actually submitted it for further private review

13   before the tip was submitted.

14          Lastly I just want to address the good faith

15   argument.

16          Even if there was not sufficient probable cause,

17   which we do not concede, we believe absolutely there was

18   sufficient probable cause.  The good faith exception would

19   apply here.

20          This is not a bare bones affidavit in the manner in

21   which the defense suggests, because there's no grounds to

22   excise the Cox subscriber information in this warrant.

23          The police department was acting in good faith and

24   in accordance with the law of the circuit when they issued

25   that administrative subpoena.

1          Aside from the potential excision of that

2     information, no other grounds under Leon for instance were

3     raised with regard to why the good faith exception should not

4     apply.

5          So for those reasons we feel the good faith

6     exception would absolutely save the warrant, were Your Honor

7     to find there was not sufficient probable cause.

8          THE COURT:  Thank you.  Mr. Berry?

9          MR. BERRY:  Thank you, Your Honor.  First we would

10    argue that the findings in United States v. Carpenter

11    pertaining to the administrative subpoena for subscriber

12    information applied here.

13         We have Cox Communications, a third party provider,

14    that essentially has the location of Mr. Gregory's IP

15    address, where he is.

16         Now in Carpenter, it goes back to United States

17    versus Jones and talks about tracking locations, but then

18    Carpenter takes it to these cell-site location, street

19    addresses where people are moving.

20         We know that we have less of an expectation of

21    privacy out on the public road and streets.

22         That's why we have the automobile exception to the

23    search warrant.

24         So we also know that historically we have a

25    heightened expectation of privacy in our own residence.

1          And I would suggest that the next step from

2    Carpenter is that these administrative subpoenas cannot be

3    used to get the subscriber information, but in fact require a

4    warrant to protect that heightened expectation of privacy we

5    expect to have in our own residences.

6          And the reason for this is because the subscriber

7    information goes directly to our residences and where we

8    live.

9          So I would argue a permanent residence location is

10   much more private than someone's individual movements on

11   public properties, roads, highways, sidewalks.

12         My next argument goes to the CyberTip.  According to

13   the documents, this was an automated tip from Google.

14         Now I understand in the affidavit presented by the

15   government you will see that it was reviewed at some point by

16   a person to verify the image.

17         But my concern is when we start talking about

18   automated tips, what that means is it happened automatically

19   without someone looking at it.

20         An automated tip from Google security to the Center

21   For Missing & Exploited Children I think is problematic.

22         I understand the third party doctrine says, well, if

23   you have a third party involved, and it's a private company

24   and they are not the government, then there is not an

25   expectation of privacy.

1          But technology has evolved.  People don't have their

2     own private servers, non-email addresses, and the way people

3     communicate these days, I know lawyers marketing on social

4     media these days and they get private messages from Facebook

5     and other places from clients and prospective clients.

6          We may say there is no expectation of privacy in the

7     service agreements, there is definitely an expectation of

8     privacy that has evolved with the evolution of technology.

9          And while our framers may have looked at the Fourth

10    Amendment as privacy in our papers and effects, our most

11    private effects are not on paper anymore.

12         They are in our heads and in our electronic devices,

13    which subsequently are in cloud, electronic files.

14         As far as that information going to the Center For

15    Missing & Exploited Children, we know from Ackerman as much

16    as 75 percent of NCMEC's budget comes from the government and

17    that law enforcement exercises day-to-day control over the

18    Center For Missing & Exploited Children.

19         I realize that government contests whether the

20    Center For Missing & Exploited Children is in fact a

21    government entity, but our position is that Ackerman, that we

22    believe under the holding in Ackerman that it is.

23         That being said, our argument is that this CyberTip

24    coming from an automated source to a law enforcement center

25    as the basis for the warrant -- as a basis to get an

1    administrative subpoena, a warrant should have been sought in

2    this matter, and I don't believe a warrant would have been

3    issued based on that information.

4           Finally the image was put -- in arguing the

5    sufficiency of the probable cause, we know that an image was

6    put on a Google account.

7           As the government points out, that just doesn't

8    happen out of thin air.  Someone has to do something.

9           Our argument is that this is a bare bones argument

10   -- or bare bones affidavit in that the Google Images, as

11   explained in some of the attachments, are cloud-based.

12          What that means is they are stored on the cloud, not

13   necessarily on a specific electronic device.

14          And so I would argue also that the investigator in

15   this case is obviously sophisticated, has been involved in

16   child pornography investigations before, and I don't believe

17   had a good faith basis to believe that the affidavit was

18   sufficient because the fact that Google Images is a

19   cloud-based service and therefore is something that could

20   possibly be not on a hard drive, usually not.

21          The images themselves are saved in the cloud, not on

22   hard drives, and that's my argument, Your Honor.

23          THE COURT:  Does the government care to respond at

24   all?

25          MS. PRINZ:  Just briefly, Your Honor.  Thank you.

1    Your Honor, as the defense actually indicated, to apply the

2    Carpenter holding to the factual scenario before the court

3    today would require another step, not only one which the

4    court did not take, but one which the court specifically

5    refrained from taking in Carpenter.

6          In Carpenter the language of the decision talks

7    about this being a particularly narrow decision being

8    concerned with this kind of CSLI information.

9          The Carpenter language does not address IP addresses

10   or other parts of the third party doctrine.

11         It does not really change the analysis on the

12   expectation of privacy with regard to any of those things.

13         Also with regard to reference to the automated tip

14   system, the case law has made clear thus far that even when

15   it's an automated tip under the Google review system an

16   automated hash value has been previously manually reviewed

17   before being added to the hash value repository, and under

18   Redick, even without that step would be enough because of the

19   nature of hash value review.

20         The last argument that we would put before the court

21   is also that with reference to part of the exhibit, the

22   Google terms of service, part of Exhibit 1, Government

23   Exhibit 1, declaration of Cathy McGoff, the Google user

24   agreement for use of Google clear, it gives Google the right

25   to use, access and share any information you're uploading to

1    the Google server.

2          So that defeats the reasonable expectation of

3    privacy in and poisons that whole third party doctrine

4    analysis.

5          The image which triggered this automated tip had

6    already been provided to Google, even before Google reviewed

7    it, through the terms of service, even at the moment of the

8    upload, it's being shared with Google with the informed

9    knowledge of the user that that image could be used, shared,

10   accessed.

11         Thank you, Your Honor.

12         THE COURT:  Okay.  I want to make sure that I'm on

13   the same page with everybody else.

14         As I understand the document, that Google has a hash

15   tag value identifying it basically as child pornography.

16         But in addition, in this particular case, and it's

17   provided for in Exhibit No. 2 I think, that they actually

18   also physically reviewed this picture either -- before

19   sending it to the Center for Exploited Children.  Is that

20   correct?

21         MS. PRINZ:  Yes, Your Honor.  I would refer in

22   Government Exhibit 1 to paragraph 10 of the declaration of

23   Cathy McGoff, that's where it indicates Google references --

24   reflects the one image reported in the CyberTip received a

25   manual human review by Google personnel concurrent with the

1    report being sent to NCMEC .

2           THE COURT:  I just want to make sure, concurrent

3    with the report being sent versus relying on, we have the

4    hash tag value that somebody had reviewed previously who made

5    that determination, okay.

6           MR. BERRY:  Your Honor, for my -- concurrent with,

7    to me means at the same time.

8           THE COURT:  Right.  At the same time that they sent

9    the report.

10          At least that's what it seems to imply within this

11   affidavit.

12          Up above I think it's in, earlier in the affidavit I

13   think they talk about the hash tag values and what that

14   means.

15          But then in ten that this particular CyberTip

16   received a manual human review by Google personnel concurrent

17   with the report being sent to NCMEC.

18          So I guess it seems to be, as the government has

19   said, that there was a human review at the same time or

20   concurrent with them sending it.  So they reviewed it and

21   then sent it.

22          MR. BERRY:  And my argument is that it would have

23   said prior to.

24          Concurrent with seems to suggest an automated system

25   sent it and around that time someone manually reviewed it.

1          MS. PRINZ:  Well, Your Honor, I think the reason

2     they don't say prior to is that they make clear that before

3     it was ever added to the hash repository, they make that

4     clear on the first page of the their declaration, that it

5     would have manually reviewed, so it has been reviewed prior

6     to another time.

7          So I think the attestation they are making in the

8     declaration is that in generating a report, basically the

9     image is coming to Google's notice again.

10         So all this is happening now at a new point in time

11    because the hash value notice has occurred and has been

12    flagged.

13         And so therefore now these additional steps are

14    being taken, but to distinguish it from the prior, prior

15    review, so to speak.

16         THE COURT:  Right.  Anything else?

17         MR. BERRY:  No, Your Honor.

18         THE COURT:  All right.  I will order a transcript of

19    today's hearing.  The matter is taken under advisement.

20         As soon as that is filed I will get a decision out

21    as soon as I can, but obviously within thirty days from the

22    date of the transcript.

23         All right.  Anything further from the government

24    today?

25         MS. PRINZ:  No, Your Honor.

1           THE COURT:  Anything further from the defendant

2     today?

3           MR. BERRY:  No, Your Honor.

4           THE COURT:  Thank you, everybody.

5              (10:05 a.m. - End of Proceedings)

6                      I-N-D-E-X

7     EXHIBITS:                    OFFERED      RULING

8     1   Declaration of McGoff....... 6           8
      2   Declaration of Shehan....... 6           8
9     101 NCMEC CyberTip ............. 6           8
      102 Subpoena to Cox............. 6           8
10    103 Cox's Response.............. 6           8
      104 Application and Affidavit
11        for Search Warrant.......... 6           8
      105 Search Warrant.............. 6           8
12    106 Application and Affidavit
          for Search Warrant.......... 6           8
13    107 Search Warrant.............. 6           8

14

15                     C-E-R-T-I-F-I-C-A-T-E

16          I, Allan G. Kuhlman, do hereby certify that the

17    foregoing transcript is a true and accurate transcription, to

18    the best of my ability, from the digital recording of the

19    proceedings held in this matter.

20          Dated September 30, 2018.

21

22                           s/Allan G. Kuhlman
                             Allan G. Kuhlman
23

24

25