IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>PHILIP J. GREGORY,<br><br>     Defendant. | 8:18CR139 |

### GOVERNMENT'S SENTENCING MEMORANDUM

On May 22, 2018, a Grand Jury in the District of Nebraska returned an Indictment charging the defendant, Philip J. Gregory, with one count of transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1) and (b), one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). On March 28, 2019, the defendant pled guilty to Count One of the Indictment, to wit: transportation of child pornography. Pursuant to 18 U.S.C. § 2252(a)(1) and (b), a charge of transportation of child pornography carries a 5 year mandatory minimum. In a plea agreement pursuant to Federal Rule of Criminal Procedure11(c)(1)(C), the parties have agreed that the defendant shall receive a sentence no greater than 120 months. The United States requests this Court impose a sentence of 120 months, followed by ten years supervised release. In light of the defendant's offense conduct, history, and characteristics such sentence is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. §3553.

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the

sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

### A.      Nature and Circumstances

In engaging in the instant offense conduct, the defendant demonstrated a high level of involvement with material which memorializes and promotes the sexual abuse of children. The nature of the crime should therefore weigh heavily in the Court's determination of the sentence. Gregory initially came to the attention of law enforcement agents when he uploaded an image of child pornography into his google cloud storage account, triggering a CyberTipline report.  Following up on the CyberTip, Douglas County Sherriff's Office and Omaha FBI Child Exploitation Task Force agents obtained search warrants for Gregory's residence and for his Google accounts. A forensic exam of the devices seized pursuant to the residential search warrant revealed that Gregory possessed over 25,000 image files and 174 video files of child pornography. PSR at 7.

The examination of his devices and accounts gave further insight into Gregory's collection-related behavior. The types of search terms the defendant used and the content of the videos he viewed clearly illustrate the defendant's deviant interest in children. Gregory's Google search history revealed that he was looking for content relating to the terms "pedomom," "mom erotic son," "1st studio siberian mouse video archive", "preteen femdom", 'mother daughter sex," "mom sucks toddler" and "mom son taboo." PSR at 6.  According to the forensic examiner's report, files recovered from his devices also referenced the term "pthc," a common term used to reference or label pre-teen hard-core pornographic material. The recovered images included abusive images depicting pre-pubescent

minors engaged in sexual conduct and involving children as young as toddlers, and therefore exemplify the kind of material which is contemplated in the enhancement pursuant to §2G2.2(b)(4). PSR at 10. For instance, one such video depicts a 2 to 3 year-old female minor licking an adult male's penis. *Id.* The titles of other videos in the defendant's collection further illustrates the kind of material that he both sought and possessed, e.g. "man secretly fingers 4 [year old] girl under desk" and " Little angel 3 yo horny". Id, PSR at 7.

Evidence from Gregory's Gmail account also showed that he participated in online chats with other offenders. PSR at 8. These chats reveal that Gregory used such communications to request child pornographic material from other users, sometimes even requesting specific images by name, for example a video by the name of "pedomom". *Id.* Members would post and discuss images, including images of child pornography within these chat communications. Gregory himself admitted to sharing images via these chats, often for the purpose of being accepted into the chat group. PSR at 18. Thus, Gregory not only individually sought out material relating to prepubescent minors, but he also communicated and traded with other offenders in the pursuit of such material.

In the period before the revisions to the § 2G2.2 Guideline, the United States Sentencing Commission issued it's *2012 Report to Congress: Federal Child Pornography Offenses* and proposed three factors to better distinguish between child pornography offenders in view of changing technologies and developing trends among such offenders. Also referenced in *United States v. Abraham*, 944 F. Supp. 2d 723 (D. Neb. 2013), these distinguishing factors consist of: "(1) the content of an offender's child pornography collection and the nature of an offender's collecting behavior…(2) the degree of an offender's engagement with other offenders—in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and (3) whether an offender has a history of engaging in

sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense." *Id*. at 732, citing the Comm'n Rep. at 320.

There is no evidence of any hands-on sexual offense conduct before the Court, but both Gregory's collection behavior and his engagement with a community of offenders are significant circumstances of his criminal conduct and warrant due consideration. Unlike many "run of the mill" offenders, who engage solely in distribution via peer to peer file sharing programs, Gregory demonstrated a higher level of engagement. For instance, the *Abraham* court deemed Abraham's distribution to be "incidental to his downloading. There [was] no evidence that he bartered files or took any steps to become more personally involved in distribution." *Abraham* at 745. In contrast, Gregory engaged in communications with other offenders via a google chat application, in which he sought out specific videos from other communicants. PSR at 8, 18.

Despite the fact that Gregory attempted to delete much of what he viewed, forensic examiners were able to recover this large volume of images (e.g. 38,858 images as defined pursuant to USSG § 2G2.2(b)(7)(D) and USSG § 2G2.2, Application Note 6(B)(ii)). PSR at 7. It has been argued that in light of the downloading technology available today, the guideline threshold of 600 images is too low. Gregory's collection was well over this 600 image threshold, however. Rather, it is comparable in size with the 105 videos and 50,000 images recovered from the defendant in *Abraham*.[1]

Transportation of child pornography itself is a serious crime, one which has a harmful impact on the victims and the community at large. Those who view images of child pornography for their own

---

1 As a point of reference, *Abraham* received a total offense level of 29 pursuant to a modified guideline calculation, resulting in a range of 87-108 months. *Abraham* at 735. And due in part to a lack of community engagement on his part, Abraham also received an additional variance. *Id*. at 736-38. Ultimately, Abraham received a sentence of six years imprisonment. *Id*. at 738. As calculated in the PSR and in accordance with the revised 2016 Guidelines, Gregory's Guidelines range of imprisonment is between 151 and 188 months. The government's recommended sentence of 120 months, in accordance with the plea agreement, is therefore below the Guideline range as calculated in the PSR.

sexual gratification demonstrate a serious lack of empathy by engaging in such conduct. Such inability on the part of a defendant to appreciate the harm caused by such images should concern the Court. By uploading an image into his cloud storage, the defendant actively preserved an image of child pornography. Nevertheless, Gregory did more than merely upload or save and store images of child pornography; in communicating with others online he encouraged and normalized this deviant and harmful interest in others. Without the demand by consumers such as the defendant, the market for child pornography would not exist. The defendant directly furthered the child pornography market by engaging with others who were similarly interested in obtaining, sharing, and discussing such material via the internet.

In fashioning the sentence, the Court should also consider how the nature of the offense impacts victims. The "use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child" used in the production of the pornographic material. *Osborne v. Ohi*o, 495 U.S. 103, 109 (1990). Victims of child sexual abuse are likely to suffer long-lasting effects of the abuse. *See New York v. Ferbe*r, 458 U.S. 747, 758 n. 9 (1982) and Shanta R. Dube et al., *Long-Term Consequences of Childhood Sexual Abuse by Gender of Victim*, 28(5) Am J Prev Med, 430, 430 (2005) ("studies examining the long-term effects of childhood abuse and related stressors have found increased risk for outcomes such as substance use and misuse, psychiatric disorders, suicide, and numerous other health and social problems"). The long-term effects of such abuse bear upon the need for just punishment. A sentence of 120 months would adequately reflect the serious nature of the defendant's crime.

### B. History and Characteristics and the Need to Deter Future Criminal Conduct of the Defendant as well as Protect the Public

The defendant has a no criminal history. However, other characteristics of the defendant, aside from his criminal history, weigh in favor of a significant sentence. The defendant's behavior, in

downloading child pornography and encouraging his sexual interests in children by participating in online communications with others, indicates that although he has in other respects been a law-abiding citizen, he has indulged himself deviant, harmful inclinations and behaviors which exploit vulnerable children.

The defendant is a father of four children, which fact the letters written in his support have attempted to highlight as a justification for a lower sentence. However, that Gregory himself has four children and yet still engaged in behavior which not only was harmful to his own family but also contributed to the harms of the child victims whose images he viewed, should concern the Court. The lack of empathy and his ability to separate his experience as a father to vulnerable children from his exploitative behaviors indicate the level of depravity required to pursue such a course of conduct. In short, the defendant's conduct indicates that he has habitually been putting his own gratification before the needs of others.

The fact that Gregory specifically sought images of children in light of the many different kinds of pornography available on the internet evidences his sexually interest in children. The defendant admits that he has a "pornography addiction" but denies that this addiction is specific to children. PSR at 15. He describes his interest in child pornography as "thrill seeking." PSR at 16. However, he further admits that he has masturbated to pre-pubescent pornographic content, which indicates that he was sexually interested in the material beyond mere "thrill seeking." PSR at 18. The defendant's behavior, viewing and masturbating to child pornography, is the best evidence that he is sexually attracted to children. *See* James M. Cantor and Michael C. Seto, *Child Pornography Offenses Are a Valid Diagnostic Indicator of Pedophilia*, J Abnorm. Psychol., 115(3):610-5 (2006) ("Child pornography offending is a valid diagnostic indicator of pedophilia. Child pornography offenders were significantly more likely to show a pedophilic pattern of sexual arousal during phallometric testing than were comparison groups of offenders against adults or general sexology patients. In fact, child pornography

offenders, regardless of whether they had a history of sexual offenses against child victims, were more likely to show a pedophilic pattern of sexual arousal than were a combined group of offenders against children"); *see also U.S.S.C., "2012 Report to Congress: Federal Child Pornography Offenses*," ["Report"] Chapter 4, p. 77. According to the Report, "Sexual interest in children and corresponding sexual gratification are significant motivators for most child pornography offenders. Offenders often use the images to masturbate and to validate their sexual interest in children." *Id.* Significantly, this conclusion is borne out in the defendant's risk assessment evaluation. The risk assessment determined that Gregory meets the diagnostic criteria for a pedophilic disorder, and further, that he is in the moderate range with regard to his risk to reoffend according to the STABLE-2007. PSR at 20. The risk assessment also indicated that the defendant's history of alcohol abuse, which a co-occurring evaluation labeled as a "severe alcohol use disorder" contributed to his lack of impulse control. Moreover, the evaluator's subsequent personal prognosis that in his opinion Gregory falls in below average risk range, is conditioned upon "adequate supervisory supports." PSR at 21.

The PSR as whole paints Mr. Gregory's offense conduct as habitual and frequent. The defendant admits that in the years prior to his arrest, he engaged in this activity "three to four times a week often for 1-2 hours a night." PSR at 19. Thus, although the defendant has no prior criminal history of convictions, he engaged in the instant criminal conduct regularly and over a long period of time. This is borne out by the volume of images which were recovered from his computer as well. Thus the history and characteristics of the defendant illustrate the duration of his conduct and some of the risk factors he poses with regard to his deviant sexual interests and his lack of impulse control.

Therefore, the defendant's sentence should both deter him from engaging in future criminal conduct and also protect children from his actions. The government avers that, if given the opportunity, there is a strong likelihood that the defendant will engage in similar behaviors in the future, due to his sexual attraction to minors.

7

According to *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, Ryan C. W. Hall, M.D. and Richard C.W. Hall, M.D., P.A., Mayo Clin. Proc. (April 2007), "The published rates of recidivism are in the range of 10% to 50% for pedophiles depending on their grouping. Some studies have reported that certain classes of pedophiles (e.g., homosexual, nonrelated) have the highest rate for repeated offending compared with other sex offenders." In imposing a sentence for transportation of child pornography, the Court should aim to send a message of deterrence, both to Gregory, with regard to his potential future conduct, and to other offenders within the District.

Old age does not necessarily deter child sexual offenders. The Hall article notes that, "In a study that examined the relationship between age and types of sexual crimes, Dickey et al found that up to 44% of pedophiles in their sample of 168 sex offenders were in the older adult age range (age 40-70).When compared with rapists and sexual sadists, pedophiles comprise 60% of all older offenders, indicating that pedophiles offend in their later years at a greater rate than other sexual offenders." Hall at 458. *See also* H.R. Rep. No. 107–527 at 2 (2002) ("recidivism rates do not appreciably decline as offenders age"). Moreover, because the defendant used the internet to commit his crimes, it is even more unlikely that old age would prevent him continuing to offend. Because supervised release allows the Court to fashion appropriate conditions to monitor the defendant's conduct and provide him with beneficial treatment, it is the most useful way to address the defendant's risk of reoffending post-incarceration. Therefore, the need to protect the public also weighs in favor of lifetime supervised release.

### D.     Need to Provide Treatment to Defendant

Due to the nature of the defendant's crimes, the defendant should be ordered to undergo a sex offense-specific evaluation and participate in any sex offender treatment and/or mental health treatment programs recommended or approved by the probation office.

### G. Restitution

It should be noted that the defendant has agreed to pay restitution in the amount of $1500.00 to each victim who has submitted a claim in advance of sentencing. Currently, the Government has received restitution requests related to three child pornography series for which Gregory possessed one or more images.

### Conclusion

In light of the 3553(a) factors, a significant sentence is appropriate. A sentence of 120 months is sufficient to reflect Gregory's instant offense behavior, the seriousness of his conduct, his cooperation, and the needs for both deterrence and treatment. For the reasons stated above, the United States asks the Court to impose a guidelines sentence of 120 months of imprisonment and 10 years supervised release.

Respectfully submitted,

UNITED STATES OF AMERICA, Plaintiff

JOSEPH P. KELLY
United States Attorney
District of Nebraska

By: *s/ Michael P. Norris*
MICHAEL P. NORRIS (#17765)
Assistant U.S. States Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700

/s/
Nadia C. Prinz
Trial Attorney
United States Department of Justice
Criminal Division
Child Exploitation and Obscenity Section
1400 New York Ave. NW, Suite 600
Washington, D.C. 20005
Phone: (202) 514-3740
Email: Nadia.Prinz@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on June 6, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

                                                  */s/ Michael P. Norris*
                                                  Assistant U.S. Attorney